367 P.2d 245

**M. T. DONATO and Iris E. Donato, his wife, Appellants,**

**v.**

**Kenneth Harold FISHBURN, d/b/a City Sheet Metal, Appellee.**

**No. 7142.**

Supreme Court of Arizona, In Division.

Dec. 29, 1961.

Botsford & Turner, Scottsdale, for appellants.

Wilson & Books, Phoenix, for appellee.

McFATE, Judge of the Superior Court.

This is an appeal from a judgment of the trial court sitting without a jury, declaring that a certain promissory note signed by M. T. Donato was the community obligation of the maker and his wife, Iris E. Donato, and entering judgment accordingly. The appellants contend that the note was the sole and separate obligation of M. T. Donato.

The facts in the case are as follows:

Prior to executing the note referred to, Mr. Donato was president and owned 60% of the capital stock of Period Homes, a California corporation. He and two other individuals had organized this corporation for the purpose of constructing homes for sale. The stock was held by the Donatos as their community property. At the time the note was executed the corporation was in serious financial difficulty. It had

constructed 32 homes which it was unable to sell and it was indebted to the extent of approximately $30,000.00 to various construction firms. One of these creditors was the appellee Fishburn, d/b/a City Sheet Metal, who was entitled to enforce a mechanic's lien against the houses. The filing of such a lien would have forced the corporation into bankruptcy, according to Mr. Donato, inasmuch as the company was unable to pay its debts.

In consideration of appellee's agreement not to file his mechanic's lien against the property of the corporation, Donato made, executed and delivered to him the promissory note which is the subject of this litigation, in the principal amount of $2,711.00, payable 90 days after date with interest at 6% per annum.

Other motivating factors which led Donato to enter into the agreement were as follows: Up until the time the corporation commenced to have financial trouble he personally had a good credit rating and he did not want that credit rating or feeling of trust in him destroyed; what he hoped to do eventually was to get his money back which he had invested in the corporation and he wanted the opportunity and time to make the attempt. It also appears that if he could have retrieved the situation he would have benefited financially by way of salary and further remuneration from the corporation.

On re-direct examination Donato testified as follows:

"Q. Alright. So the agreement was then that you would sign a note in lieu of the lien? A. Individually; and at that time, one of the men in City Sheet Metal wanted Mrs. Donato to sign and, of course, there was other stockholders who didn't want to sign, but I felt that I should.

"Q. You said they wanted Mrs. Donato to sign. Did Mrs. Donato sign? A. No; no, she didn't.

"Q. But, Fishburn or somebody from City Sheet Metal asked you to have her sign? A. Yes; yes, they wanted Mrs. Donato on the note.

"Q. And did you agree or what? A. No.

"Q. You refused? A. No—that's right."

Finally, it should be noted that the corporation did not become bankrupt and is still in existence.

Appellants present one assignment of error which in effect attacks the legal sufficiency of the evidence to support the judgment. They rely on the following grounds for reversal:

1. That the obligee on the note knew and agreed that the note was intended to be Donato's sole and separate obligation and to give him judgment against the com-

munity in contravention of this manifest intention would be to award him more than he bargained for.

2. That there was sufficient evidence in this case to overcome the presumption that a debt contracted during coverture is a community debt, inasmuch as the undisputed testimony shows that the note in question was given purely as an accommodation, without intention to benefit and without actual benefit to the community. Hence, say appellants, the rule applies that an accommodation note signed by the husband alone, which does not benefit the community estate is his separate debt.

■ It is, of course, well settled that a debt incurred by a married man during coverture is presumed to be a community obligation, and that the burden is on one attempting to overcome the presumption to prove his contention. Cosper v. Valley Bank, 28 Ariz. 373; 237 P. 175; McFadden v. Watson, 51 Ariz. 110, 74 P.2d 1181; Morgan v. Bruce, 76 Ariz. 121, 259 P.2d 558. It is also well settled that if any reasonable evidence supports the judgment of the trial court, it will be sustained.

With respect to appellants' contention that the circumstances surrounding the execution of the note show an agreement between the debtor and the creditor that the debt would be the separate obligation of the maker only, we believe that appellant reads more into the testimony than is actually present. Assuming that one of the men at City Sheet Metal wanted Mrs. Donato to sign the note and that Mr. Donato would not secure her signature, and that the creditor accepted the note without her signature, these circumstances in themselves do not necessarily constitute an agreement on the part of the creditor that the debt was the separate obligation of the maker only, nor does it amount to a waiver of the creditor's rights against the community.

■ The controlling question to be determined from the evidence was whether the transaction was intended by Donato to benefit the community consisting of himself and his wife. If it was, and if the creditor did not agree to accept the sole obligation of Mr. Donato and did not waive his rights against the community, then he is entitled to proceed against the community.

■ We are of the opinion that there was sufficient evidence upon which the court could find and did find that the note was a community obligation. The maker was interested in protecting the community interest in the corporation. The community benefited by acquiring additional time to work out the financial affairs of the corporation in an effort to retrieve something of value for the financial benefit of the community.

The case of I. E. Dupont de Nemours & Co. v. Garrison, 13 Wash.2d 170, 124 P.2d 939, 943, sets forth the rule as to the liability of the community for a note given by a married man for the benefit of a corporation in which he is a stockholder, the stock being the property of the community. We quote from that decision:

"A note given, or an obligation incurred, by a married man for the benefit of a corporation in which he is a stockholder, binds his marital · community if the corporate stock is the property of the community, and the test is whether the transaction is carried on for the benefit of the community. It is immaterial that the community actually derives no profit therefrom. Way v. Lyric Theater Co., 79 Wash. 275, 140 P. 320; Henning v. Anderson, 121 Wash. 53, 207 P. 1048; McNamara v. Gerbel, 167 Wash. 56, 8 P.2d 1001.

"In the McNamara case, a marital community owned forty-nine percent of the stock of a corporation engaged in the construction business. It had lost heavily on two contracts and was engaged in the performance of a third when a trade acceptance for materials furnished fell due. The husband signed promissory notes covering the indebtedness as comaker with the corporation. The notes were dated February 1, 1924. A receiver was appointed for the corporation on March 10, 1924, and it was thereafter adjudged bankrupt. Holding that the notes constituted a community obligation, the court said, at page 60 of 167 Wash., at page 1002 of 8 P.2d: 'The three notes were the obligation of the corporation. In that corporation appellant husband had an interest to the extent of his salary and to the further extent of any profits available out of the contracts. "The fact that no profit resulted is immaterial." Way v. Lyric Theater Co., supra. It was to Gerbel's interest—he was a stockholder, secretary and business manager—that the corporation should not be pressed for payment and thereby gain an extension of time of the payment of the trade acceptance. * * * though the construction company was in fact insolvent, it was a going concern as it continued to transact its ordinary business. It did not go into the hands of a receiver until about six weeks after the notes were delivered and was not adjudicated bankrupt until March 24, 1924.' "

This court has approved the principle that a husband is the manager of the community business, City of Phoenix v. State of Arizona, 60 Ariz. 369, 137 P.2d. 783, 146 A.L.R. 1255, and where his acts. are in respect to and in furtherance of the community affairs, the obligations created thereby are those of the community irre-

spective of whether any pecuniary benefit was realized. For example, in McFadden v. Watson, 51 Ariz. 110, 74 P.2d 1181, we held that if the act which gives rise to the obligation, even though tortious in nature, was done with the bona fide intention of protecting the interest of the community, it becomes a community debt even though no benefit actually resulted.

There being ample evidence to sustain the trial court's judgment, it is affirmed.

STRUCKMEYER, C. J., and BERNSTEIN, V. C. J., concur.