193 P.3d 314

**RACKMASTER SYSTEMS, INC., Plaintiff–Judgment Creditor–Appellee,**

v.

**Patrick MADERIA, Defendant–Judgment Debtor–Appellant,**

**Jane Maderia, Defendant–Appellant.**

**No. 1 CA–CV 07–0646.**

Court of Appeals of Arizona, Division 1, Department E.

June 24, 2008.

Jaburg & Wilk, PC by Kathi M. Sandweiss, Roger L. Cohen, Phoenix, Attorneys for Appellants.

Davis Limited by Greg R. Davis, Scottsdale, Attorneys for Appellee.

WEISBERG, Judge.

¶ 1 Patrick and Jane Maderia, husband and wife, appeal from the superior court's ruling declining to quash a writ of garnishment against a community property bank account. The court concluded that Rackmaster Systems, Inc., of Bloomington, Minnesota could garnish an Arizona bank account belonging to both Patrick and Jane to satisfy a Minnesota judgment Rackmaster had obtained solely against Patrick. For reasons that follow, we conclude that the superior court erred in relying upon an unpublished memorandum decision of this court and in concluding that Rackmaster, the judgment creditor, could garnish the community bank account. We therefore reverse and remand for further proceedings in the superior court.

## BACKGROUND

¶ 2 Although we have a very limited record of the Minnesota proceedings, the following facts are undisputed. As president and Chief Executive Officer of TriStar Interna-

tional, Inc., an Arizona corporation, Patrick signed a credit agreement in 2001 with Rackmaster that stated in part: "Signature of this application constitutes a personal guarantee should this account become delinquent." Jane did not sign the credit application. TriStar defaulted on its obligation, and Rackmaster filed suit in Minnesota against TriStar, Patrick, and another entity. Jane was not named or served in the Minnesota action. A Minnesota court entered a default judgment solely against Patrick in the amount of $23,110.98.

¶ 3 In 2003, Rackmaster filed in Maricopa County Superior Court an affidavit of foreign judgment, a notice of filing the foreign judgment, and an application for a writ of garnishment, all of which named only Patrick. Patrick requested a hearing and alleged that Rackmaster was attempting to garnish a community property account to satisfy a judgment against him alone.

¶ 4 At the hearing, Patrick argued that he and Jane had been married and were residents of Arizona when the Minnesota court entered judgment against him, that their bank account was community property, and that Jane had never been named or served in the garnishment matter.[1] Rackmaster asserted that the Minnesota judgment arose from a community pursuit, was a community debt, and was entitled to full faith and credit. Rackmaster conceded that the garnished account was community property but cited Arizona Revised Statute ("A.R.S.") section 25–215(C) (2007), which provides that "[ t] he community property is liable for a spouse's debts incurred outside of this state during the marriage which would have been community debts if incurred in this state."[2] The court ordered the parties to brief the propriety of allowing garnishment of the bank account.

¶ 5 Rackmaster's brief cited *National Union Fire Insurance Co. of Pittsburgh v.*

---

1. Attorney James Kneller filed a notice of appearance stating that he represented both Patrick and Jane.

2. All property acquired by either spouse during marriage is presumed to be the community property of both. A.R.S. § 25–211 (2007). In addi-

tion, debts incurred during marriage by either spouse are presumed to be community debts, and one who asserts otherwise must produce clear and convincing proof to overcome the presumption. *Lorenz–Auxier Fin. Group, Inc. v. Bidewell,* 160 Ariz. 218, 220, 772 P.2d 41, 43 (App.1989).

*Greene,* 195 Ariz. 105, 985 P.2d 590 (App. 1999), to argue that a judgment obtained in a non-community property state against one spouse may be enforced against the marital community property if (1) the obligation underlying the foreign judgment would have been a community obligation had it been incurred in Arizona and (2) the other spouse was joined in the Arizona domestication action and could contest the debt's characterization as a community debt. Rackmaster also argued that Minnesota law does not require both spouses to be joined when an action is brought against one spouse,[3] that the only possible defense to enforcement of the judgment was that it was based on a debt that would have been Patrick's separate obligation if incurred in Arizona, and that because the judgment "was based upon an obligation relating to the marital community's company," it was not a separate debt.[4] Rackmaster conceded, however, that if Jane entered an appearance to contest the community nature of the obligation, "enforcement of the judgment [would be] premature."

¶ 6 The Maderias responded that the obligation upon which the Minnesota judgment was based was not a community obligation because Patrick had been sued on his personal guaranty and that under Arizona law, a guaranty signed only by Patrick could not bind the community.

¶ 7 In its ruling, the court accepted that Minnesota does not require both spouses to sign a personal guaranty in order to bind the marital community and also found that Minnesota need not follow Arizona's joinder statutes. Thus, it concluded that Jane's failure to sign the guaranty was irrelevant; that Patrick's activities had benefitted the marital community; and that if the Maderias had

lived in Minnesota, the judgment could have been collected against both of them. The court additionally adopted the reasoning of a memorandum decision of this court, *Tony Twist v. Todd McFarlane and Todd McFarlane Productions, Inc.,* 1 CA–CV 05–0833 (Ariz.App. Feb. 6, 2007) (mem.decision), in concluding that Rackmaster could garnish the community bank account.

¶ 8 Jane then hired separate counsel who filed a motion to quash the garnishment and for a status hearing. The court denied her motion. Jane moved for reconsideration, arguing that the underlying debt would not have been a community debt in Arizona and that the garnishment of community assets would violate her due process rights. The court again denied her motion. The Maderias timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(F)(3) (2003).

## DISCUSSION

¶ 9 At the outset, we note that the discussion in Rackmaster's answering brief devoted to comparing this case to *Tony Twist* is improper argument and will not be considered. A memorandum decision of this court is not precedent and cannot be

> cited in any court except for (1) the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case or (2) informing the appellate court of other memorandum decisions so that the court can decide whether to publish an opinion, grant a motion for reconsideration, or grant a petition for review.

Ariz. R. Civ.App. P. 28(c). Moreover, *Tony Twist* did not involve a guaranty given by only one spouse, a critical fact in this case,

---

3. The case Rackmaster cited to assert that "it is not necessary to join a spouse in an action against the other spouse" is inapposite. In *Kisch v. Skow,* 305 Minn. 328, 233 N.W.2d 732, 733 (1979), an automobile accident victim first sued the automobile driver and obtained a judgment; he later sued the vehicle's owner, the driver's husband. Although Minnesota law did not mandate joinder of joint tortfeasors, the trial court quashed service of process on the husband because he had not been joined in the prior suit. The Minnesota Supreme Court reversed because the husband knew of the first suit, could have chosen to become a party, and could not claim

any prejudice from his absence. *Id.* at 736. Furthermore, a Minnesota statute provides: "A spouse is not liable to a creditor for any debts of the other spouse." M.S.A. § 519.05(a).

4. Although a spouse who gives a promissory note to benefit a corporation in which he is a stockholder binds the marital community if the corporate stock is community property and the transaction is for the community's benefit, *Kreiss v. Shipp,* 14 Ariz.App. 113, 114, 481 P.2d 284, 285 (1971), no evidence in this record showed that Patrick owned any stock in TriStar.

and thus is not comparable even if it could serve as precedent.

■ ¶ 10 We now turn to the merits of the appeal. We review the parties' respective assertions about the application of Arizona law to a foreign judgment, which pose questions of law and mixed questions of law and fact, *de novo. Alberta Sec. Comm'n v. Ryckman,* 200 Ariz. 540, 543 ¶ 10, 30 P.3d 121, 124 (App.2001).

■ ¶ 11 This appeal turns upon whether A.R.S. § 25–214(C)(2) (2007), which requires both spouses to sign a guaranty in order to bind their community, is procedural or substantive in nature. If procedural, the community bank account belonging to the Maderias may be garnished to satisfy the Minnesota judgment against Patrick. If substantive, the writ of garnishment must be quashed. For the following reasons, we conclude that the right afforded by A.R.S. § 25–214(C) is substantive.

¶ 12 In enacting statutes governing community property, the Arizona legislature has determined that, in most circumstances, either spouse can control and encumber the assets of the marital community. For example, A.R.S. § 25–214(B) states: "The spouses have equal management, control and disposition rights over their community property and have equal power to bind the community." Furthermore, in most circumstances, A.R.S. § 25–215(D) allows one spouse to contract debts for the community. However, it limits such power by providing in part that: *"Except as prohibited in § 25–214,* either spouse may contract debts and otherwise act for the benefit of the community." (Emphasis added.)

¶ 13 As might be expected, A.R.S. § 25–214 establishes several limitations upon the power of one spouse to bind the community. Of particular importance here is the prohibition found in A.R.S. § 25–214(C)(2), which

states that when the instrument is a guaranty, the community will be bound only upon the signatures of both spouses.[5]

■ ¶ 14 When interpreting a statute, we strive to give each provision meaning and to adopt a reading that does not render any portion superfluous or ineffective. *Mejak v. Granville,* 212 Ariz. 555, 136 P.3d 874 (2006); *Pinal Vista Properties, L.L.C. v. Turnbull,* 208 Ariz. 188, 91 P.3d 1031 (App.2004). Our courts have emphasized that the purpose of A.R.S. § 25–214(C) "is to protect one spouse against obligations undertaken by the other spouse without the first spouse's knowledge and consent" and that this purpose "would be frustrated if the husband … were able to charge the wife's interest in the community with the debts he guaranteed." *Vance–Koepnick v. Koepnick,* 197 Ariz. 162, 163, ¶ 6, 3 P.3d 1082, 1083 (App.1999).

¶ 15 Thus, whether the guaranty benefitted the community is beside the point. In *Vance–Koepnick,* even though the subject guaranty was for the benefit of community, we ruled that it still could not bind the community without the signatures of both spouses. *Id.* at ¶ 5. We held that "[t] he plain words of [§ 25–214(C) ] have been construed to mean that *the community is not bound by any guaranty that is not signed by both spouses, even though the guaranty was for a business that benefitted the marital community."* Id. (emphasis added). To support this conclusion, we cited *Consolidated Roofing & Supply Co. v. Grimm,* 140 Ariz. 452, 458, 682 P.2d 457, 463 (App.1984), which held that a guaranty signed only by a husband could be enforced against his separate property but not against his wife or the marital community. Therefore, the superior court's finding that the community benefitted from Patrick's activities is unavailing.

**5.** Section 25–214(C) states:
Either spouse may separately acquire, manage, control or dispose of community property or bind the community, *except that joinder of both spouses is required in any of the following cases:*
   1. Any transaction for the acquisition, disposition or encumbrance of an interest in real property other than an unpatented mining claim or a lease of less than one year.
   2. Any transaction of *guaranty,* indemnity or suretyship.
   3. To bind the community, irrespective of any person's intent with respect to that binder, after service of a petition for dissolution of marriage, legal separation or annulment if the petition results in a decree of dissolution of marriage, legal separation or annulment.
(Emphasis added.)

¶ 16 We note that neither *Vance–Koepnick* nor *Consolidated Roofing* involved attempts to enforce an out-of-state judgment. But there is no reason to reach a different conclusion when the creditor seeking to enforce a guaranty given by one Arizona spouse brings an out-of-state judgment to Arizona that if enforced would infringe the interest of the other spouse in community property. *Zork Hardware Co. v. Gottlieb,* 170 Ariz. 5, 5–6, 821 P.2d 272, 272–73 (App.1991), is instructive. There, the husband alone guaranteed the debts of a hardware store, and when the store defaulted, the creditor obtained a judgment in Texas against the husband. To compromise the judgment, the husband signed a promissory note in the creditor's favor but when he later defaulted, the creditor sued both the husband and his wife. *Id.* at 6, 821 P.2d at 273. We affirmed a judgment against the husband's separate property and rejected the notion that "one spouse acting unilaterally [could], by signing a promissory note during marriage, convert a separate obligation into a community one." *Id.*

¶ 17 We reached a similar result in *Phoenix Arbor Plaza, Ltd. v. Dauderman,* 163 Ariz. 27, 30, 785 P.2d 1215, 1218 (App.1989), when we held that Arizona law governed the liability of a wife, a California resident, on a guaranty signed by her husband to secure performance of a lease of Arizona property. We affirmed summary judgment in favor of the wife and the marital community, noting that "[i] t makes no sense to allow a spouse to jeopardize the other spouse's property rights by going to another state and making a unilateral guarantee affecting that property." *Id.* at 31, n. 1, 785 P.2d at 1219, n. 1; *see also Citibank (Ariz.) v. Van Velzer,* 194 Ariz. 358, 362, ¶ 15, 982 P.2d 833, 837 (App.1998)(husband's signature on promissory note giving recourse against community property did not overcome requirement "that both spouses execute the documents in order for the marital community to become liable for the debt of another"; instead, A.R.S. "§ 25–214(C) ... rebuts the presumption that the debt is a community debt").

¶ 18 In the instant case, allowing the enforcement of a guaranty signed only by Patrick would render ineffective and useless the explicit prohibition of A.R.S. § 25–214(C)(2). Because the legislature clearly intended that A.R.S. § 25–214(C)(2) protect the substantive rights of the non-signing spouse, we conclude that it is a substantive law that bars collection of the guaranteed debt from the community's property.

¶ 19 Rackmaster contends, however, that the prohibition in A.R.S. § 25–214(C) is virtually identical to the requirement of A.R.S. § 25–215(D) that in an action on a community debt, "the spouses shall be sued jointly," which our courts have held is a procedural requirement that will not deter enforcement of an out-of-state judgment. But Rackmaster misapprehends the distinction between substantive and procedural rights.

¶ 20 Substantive law "creates and defines rights," while "procedural law prescribes the method by which a substantive law is enforced or made effective." *Daou v. Harris,* 139 Ariz. 353, 358, 678 P.2d 934, 939 (1984); *see also State v. Birmingham,* 96 Ariz. 109, 110, 392 P.2d 775, 776 (1964) ("[S]ubstantive law ... defines and regulates rights; whereas the adjective, remedial or procedural law ... prescribes the practice, method, procedure or legal machinery by which the substantive law is enforced or made effective.").

¶ 21 For example, *Daou* held that a statute mandating that a medical malpractice action be referred to a medical review panel within a certain time period did not abridge or enlarge the substantive right to a review panel. 139 Ariz. at 358, 678 P.2d at 939. Instead the statute merely regulated the time at which the review should take place, and the court concluded that such time constraints on the exercise of a substantive right are procedural. *Id.* By contrast, our courts have held that the right to a change of judge, *Del Castillo v. Wells,* 22 Ariz.App. 41, 45, 523 P.2d 92, 96 (1974); the right to appeal, *Birmingham,* 96 Ariz. at 112, 392 P.2d at 777; and statutes requiring that a party pay jury fees confer substantive rights. *Roddy v. Maricopa County,* 184 Ariz. 625, 627, 911 P.2d 631, 633 (App.1996).

¶ 22 The *Daou* court held that "the methods of perfecting and processing [substantive] rights are procedural." 139 Ariz. at

358, 678 P.2d at 939. Thus, the method of perfecting a right to collect a community debt is procedural, and the proviso in A.R.S. § 25–215(D) that both spouses "shall be sued jointly" on a community debt is a procedural provision because it governs the manner of bringing an action on a community debt. This is in contrast to the substantive right conferred by A.R.S. § 25–214(C)(2) that requires the signatures of both spouses on a guaranty in order to bind the community.

¶ 23 Furthermore, in resolving this case we do not disavow *National Union*, upon which Rackmaster relies, because that case illustrates application of the procedural-substantive dichotomy in the context of A.R.S. § 25–215(D). In *National Union*, the husband, while a Texas resident, signed a *promissory note* that was to be governed by the laws of New York. The husband defaulted, and the guarantor of his note paid his obligation and then obtained a New York judgment against the husband. 195 Ariz. at 106, ¶¶ 1–3, 985 P.2d at 591. Several years later and after the husband and his wife had moved to Arizona, the guarantor/creditor domesticated the New York judgment in Arizona. *Id.* at 107, ¶ 5, 985 P.2d at 592. The couple moved to quash the writs of garnishment but conceded that the husband's obligation on the promissory note would have been a community debt had it been incurred in Arizona. *Id.* at ¶¶ 6–7.

¶ 24 We held that the New York judgment could be enforced in Arizona by garnishment of the husband's community property wages even though the judgment creditor had not joined or named the debtor's wife in the underlying lawsuit as A.R.S. § 25–215(D) required. We ruled that A.R.S. § 25–215(D) did not preclude *recognition* of the New York judgment in Arizona because that judgment should be given the same effect as it would have been afforded in New York. *Id.* at 107, ¶ 9, 985 P.2d at 592. We also held that "[a]n Arizona court may not impress Arizona procedural law upon a foreign judgment and refuse to recognize that judgment merely because Arizona law was not followed in obtaining it." *Id.* at 107–08, ¶ 11, 985 P.2d at 592–93.

¶ 25 But we clarified that although New York law governed the judgment's validity, the *methods of enforcing* the judgment depended on Arizona law. *Id.* at ¶ 12. And, under Arizona law, the community was liable for what would have been a community obligation had it been incurred in Arizona; thus, the judgment could be enforced against community property. *Id.* Moreover, we held that due process did not require joining both spouses in the underlying New York lawsuit in order to enforce the judgment against the community property in Arizona. Among other reasons, we observed that the creditor could not have known that the parties would later move to Arizona. *Id.* at ¶ 110, ¶ 17, 985 P.2d at 595. Finally, we also held that although the creditor had obtained the New York judgment solely against the husband, when the creditor named the wife in the foreclosure action in Arizona, she was accorded the necessary due process. We therefore reversed the trial court's order quashing writs of garnishment. *Id.* at 111, ¶ 26, 985 P.2d at 596.

¶ 26 Unlike the situation in *National Union*, A.R.S. § 25–214(C) requires both spouses to have signed a guaranty before the community may be bound by that promise. This exception to the general power of one spouse to incur debts and to thereby bind the community confers substantive rights on each Arizona spouse, and the Maderia marital community is not bound by the guaranty given solely by Patrick. The superior court erred in failing to quash the writ of garnishment. Accordingly, we reverse and remand for further proceedings to quash the subject writ of garnishment and to determine whether any portion of the bank account is subject to garnishment.

## CONCLUSION

¶ 27 We reverse the superior court's judgment and remand for further proceedings. The Maderias and Rackmaster request an award of costs and attorney's fees incurred in this appeal pursuant to A.R.S. § 12–341.01 (2003). We deny Rackmaster's request, and in our discretion under A.R.S. § 12–341.01(A), we grant the Maderias' request for an award of reasonable attorney's fees sub-

ject to their compliance with Arizona Rule of Civil Appellate Procedure 21. Also, the Maderias are prevailing parties and are entitled to their costs pursuant to A.R.S. § 12–341 (2003).

CONCURRING: MAURICE PORTLEY, and PATRICIA K. NORRIS, JJ.

